WALLACE LYON and Others, Plaintiffs, *v.* MARK L. TOOKER and Others, Defendants.

Supreme Court, Trial Term, New York County, April 29, 1938.

*William P. Cavanaugh,* for the plaintiffs.

*Phillip M. Payne,* for the defendants.

CAREW, J. It appears from the stipulation and the testimony that on December 9, 1930, the plaintiffs over the phones sold 15 shares of Bank of United States stock to the defendants; on the 10th of December, 1930, plaintiffs over the phones sold 100 shares of Bank of United States stock to the defendants; on the 11th of December, before business hours, the Superintendent of Banks took possession of the Bank of United States. Thereafter on December 11, 1930, plaintiffs delivered 115 shares of stock of the Bank of United States to the defendants pursuant to the previous sales. On the 1st of July, 1932, the Superintendent of Banks declared an assessment of twenty-five dollars per share against the stockholders of the Bank of United States and thereafter on August 10, 1932, started an action under section 113-a of the Banking Law against the record owner of the aforesaid shares, Alexander B. Halliday, who on April 20, 1933, impleaded the plaintiffs as equitable owners of the aforesaid stock. In said action the said Alexander B. Halliday also impleaded the defendants as equitable owners of said stock but discontinued as against the defendants at the commencement of his trial and thereafter the Superintendent proceeded and recovered judgment therein against said Alexander B. Halliday for $7,003.73, which was affirmed in the Court of Appeals (*Broderick* v. *Adamson,* 272 N. Y. 316), where the said Alexander B. Halliday recovered a judgment over against these plaintiffs as equitable owners for $8,025.33. The plaintiffs now sue the defendants as equitable owners of said stock by virtue of the sales and deliveries above set forth.

This action is not brought on the statute (Banking Law, § 113-a, formerly § 120), but is brought rather on a quasi-contractual obligation raised by the common law on equitable principles as a corollary to the liability provided for in said section of the Banking Law. The limitation provided by the Banking Law for the liability provided in section 113-a is six years. This cannot, however, be the limitation on the pending action, as this is not an action brought by the Superintendent, but the quasi contract above suggested.

It must, therefore, be limited either by section 48, subdivision 1, of the Civil Practice Act, as a contract implied in law, or by section 49, subdivision 4, as a common-law liability against the stockholder of a bank. As it is a liability raised on equitable principles as a corollary to the Banking Law, section 113-a, I prefer to hold that equitable principles will apply the analogous limitation of section 48, subdivision 1, of the Civil Practice Act of six years, the same limitation period as governs the Superintendent's action, rather than section 49, subdivision 4, of the Civil Practice Act, which is three years, a much shorter limitation. Various reasons impel me to this conclusion. Were I to hold otherwise it might very well be that this action would have been barred before the Superintendent ever started his action, as this action would be barred in three years and the Superintendent would have six years to bring his.

I also hold that the right of action does not arise until after the assessment notice and demand and non-payment of the assessment within the time fixed by the Superintendent of Banks. The language of section 80 of the Banking Law provides expressly that the cause of action on behalf of the Superintendent does not arise until after the assessment notice and demand and non-payment. Similar provisions in National and other State banking laws have been construed in this way. (*Hillmer* v. *Anderson*, 15 F. Supp. 457, 459; Morse on Banks and Banking, § 678.) The liability which is here sued upon and the liability of the record stockholder is to be distinguished from the cause of action for breach thereof. Just as the maker of the note is liable thereon before non-payment, but the cause of action arises only after non-payment, so the cause of action and the limitation start to run here after assessment and non-payment. As the assessment was laid on July 1, 1932, and I have held that the Statute of Limitations is a six-year one, this action is brought in time.

In the negotiations between the parties on the 9th and 10th of December, 1930, when the purchase was made, it was never in any way intimated or suggested by the defendants that they were acting

as agents or brokers for the Bankers Company. They never in any way suggested that they were buying for the benefit of any one other than themselves. I feel that if they wanted to avoid the natural construction of their acts they should have in some way intimated that they were acting as agents. (*Cobb* v. *Knapp,* 71 N. Y. 348; *Holt* v. *Ross,* 54 id. 472, 475; *Powers* v. *McLean,* 14 App. Div. 92; affd., 164 N. Y. 588.)

In *Rubinstein* v. *Lawson* (162 Misc. 330) the Appellate Term, First Department, squarely held that the fact that the purchase was made for undisclosed principals would not relieve the brokers who there stood in the situation of the defendants here. This is a decision rendered here by three of my colleagues, Justices LYDON, FRANKENTHALER and HAMMER, who have all dealt with these questions in many cases. I feel obliged to follow them on this point and direct judgment for the plaintiffs for the sum of $2,875, with interest from August 8, 1932, in all $3,857.05.